UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ADA D. TURNER ET AL. | CIVIL ACTION |
| VERSUS | NO. 10-1823 |
| NEAL E. PLEASANT ET AL. | SECTION "G" (2) |

### ORDER AND REASONS ON MOTIONS

I previously deferred a ruling on the following motions in this matter: (1) Defendant Standard Fire Insurance Co.'s Motion to Quash Subpoena Duces Tecum, Record Doc. No. 34; (2) Motion of Defendants, Neal E. Pleasant and RPIA of Delaware, Inc., to Quash Subpoena Duces Tecum, Record Doc. No. 38; and (3) Defendant Standard Fire Insurance Co.'s Motion to Adopt and Joinder in Neal E. Pleasant and RPIA of Delaware, Inc.'s Motion to Quash Subpoena Duces Tecum, Record Doc. No. 40. Specifically, I ordered defendants to provide to me for in camera review a copy of the subpoenaed litigation files of the law firms of Chopin, Wagar, Richard & Kutcher and Waller & Associates. As ordered, defendants produced the documents to me in camera and filed supplemental memoranda. Plaintiffs also filed a supplemental opposition memorandum. Record Doc. Nos. 48, 49 and 51.

Having reviewed the subject materials in camera, and considering the supplemental memoranda filed by both sides, I find that the privilege and work product objections asserted by defendants have merit and that the crime/fraud exception does not apply to strip these materials of their protected nature. Nothing in the litigation files indicates that the

defendants' purposes or intent in employing attorney Richard Chopin or Dr. Christopher Cenac were to gain an unfair advantage or favorable treatment in the underlying litigation, and thus commit fraud on the court.

    I note initially that the subpoenaed materials are the litigation files maintained by defendants' counsel of record in the underlying predecessor case, <u>Ada D. Turner et al. v. Neal E. Pleasant et al.</u>, C.A. No. 01-3572 "T"(1). The materials measure approximately nine inches (9") in thickness. <u>Not</u> everything in them is privileged or work product, including such items as court orders, correspondence directly or copied to plaintiffs' counsel and pleadings and other papers publicly filed in the record of the underlying case and therefore necessarily served on plaintiffs' counsel. Fed. R. Civ. P. 5. These non-privileged and non-work product materials are either irrelevant to the claims made in this case or already in the possession or readily available to plaintiffs. For those reasons, they will not be ordered produced, and this order focuses instead on the remaining materials in these files, which on their face appear clearly privileged or work product.

    In camera review of litigation files protected by the attorney-client privilege and/or work product doctrine is appropriate under the crime/fraud exception when an appropriate prima facie showing is established. E. Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u> at 442 (ABA Section of Litigation) (4th ed. 2001) (hereinafter "Epstein"). An appropriate prima facie showing requires "a factual basis adequate to support the good faith belief by a reasonable person, that in camera review of the materials

may reveal evidence to establish the claim that the crime-fraud exception applies." Id. at 443 (citing United States v. Zolin, 491 U.S. 554, 572 (1989)). Defendants have argued that no prima facie showing sufficient to require in camera review of these files has been made. In my view, however, a prima facie showing sufficient to require an in camera review to determine the applicability of the crime/fraud exception was established in the opinion issued by the Fifth Circuit when it remanded this matter to this court. Turner v. Pleasant, 663 F.3d 770 (5th Cir. 2011). Thus, I have conducted an in camera review of the materials because I find it is consistent with the Fifth Circuit's remand order.

For the crime/fraud exception to apply in a way that would vitiate privilege or work product protection, it must be shown that the client sought the attorney's advice with the specific intent to further the crime/fraud, where "there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal criminal [or fraudulent] activity." Epstein, id. at 427 (citing In re Grand Jury Subpoenas Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986)). As to privilege, the intent inquiry focuses only on the client and asks "to what end and for what purpose the legal advice was sought," while the attorney's recognition or awareness of any crime/fraud is irrelevant. Id. at 427 - 28. "[A] reasonable basis . . . for concluding that there was a fraudulent objective" is sufficient to establish the required intent. Id. at 429 (citing In re Grand Jury Subpoena Duces Tecum (Marc Rich), 731 F.2d 1032, 1039 (2d Cir. 1984)). As to work product, the "innocence" of both the client and attorney are considered, and the protection will be

stripped away "[o]nly if the disputed document was itself created to further or to conceal a fraud, . . ." Id. at 594.

In this case, for the following reasons, I find that nothing in the litigation files indicates that the defendants/clients employed Chopin or Dr. Cenac with the purpose or intent to obtain an unfair advantage with or favorable treatment by Judge Porteous.

As to Chopin, the documents reveal no reasonable basis to believe the defendants/clients had a fraudulent objective in hiring him. The original defense counsel in the underlying case was an attorney with Waller & Associates, a small captive law firm that clearly stated on its own letterhead that its lawyers were employees "of the Travelers Indemnity Company And its Property Casualty Affiliates." The public records of this court establish that Chopin, a partner in a separate firm and not a direct employee of any defendant, has regularly represented Travelers/Standard Fire (or its subsidiaries) in various other cases over the years in this court, none of which involved Judge Porteous. See, e.g., Travelers Property, et al v. MG-332 Barge, et al, C.A. No. 00-130 (Judge Fallon); Brown v. Schlumberger Tech, et al, C.A. No. 01-3755 (Judge Vance); Abercrombie, et al v. Standard Fire Insurance Company, et al, C.A. No. 06-7601 (Judge Vance); Porter, et al v. Chevron USA, Inc., C.A. No. 90-1761 (Judge Heebe); Sumlin, et al v. Hertz Corporation, et al, C.A. No. 96-3736 (Judge McNamara); Keith v. Freeport Sulphur Co., et al, C.A. No. 96-3803 (Judge Lemelle). Thus, it appears that one explanation for Chopin's hiring was his existing professional history with the client. The only other indication in these

materials of a possible reason for Chopin's hiring appears in a communication from Taylor to a Travelers/Standard Fire claim correspondent before Chopin was retained indicating that the underlying case would be a "major case" that would require additional counsel for its defense. Chopin was hired as additional counsel almost two months later. Nothing in the litigation files indicates that Chopin was hired because of his relationship or influence with Judge Porteous.

Similarly, there is no reasonable basis indicated in the litigation files to believe that the defendants/clients had a fraudulent objective in hiring Dr. Cenac as an expert witness. At no point in these materials is there any mention or even any allusion to any friendship or influence between Dr. Cenac and Judge Porteous. Rather, the records indicate that Dr. Cenac was recommended and hired as an expert witness because defense counsel wanted a medical opinion from someone whom he believed would "honestly determine" whether plaintiff suffered from a pre-existing condition unrelated to the subject incident. The in camera materials contain no basis upon which it might reasonably be inferred that Dr. Cenac was either recommended as a prospective expert witness or ultimately retained in that capacity because of his relationship with Judge Porteous or for any other illegitimate purpose.

Only one document in these voluminous materials reveals even a conceivable suggestion of a possible reference to Chopin's relationship with Judge Porteous. In a March 4, 2003 e-mail in which Chopin responds to a question from defendant Neal

Pleasant, Chopin indicates, without naming Judge Porteous, that "I know this judge very well . . ." However, the statement is made in the context of a discovery issue of the type that is almost always addressed in this court by the assigned magistrate judge, not by the district judge. Thus, it appears that Chopin's comment in this regard referred to the magistrate judge, not Judge Porteous. Moreover, the clear context of Chopin's overall communication to his client in this e-mail is an accurate explanation of the applicable discovery law and the prudent advice that his client comply with it, not only as a matter of legal obligation but also as a matter of "courtesy and professionalism" to plaintiffs and opposing counsel. This is precisely the kind of advice one would expect a lawyer to give in regards to any judge and any such question.

In short, I find that nothing in the subject materials indicates that defendants, Chopin or Dr. Cenac acted with the purpose of or intended to commit fraud on the court, whether by obtaining some advantage based upon, or by making some misrepresentation in order to conceal fraud concerning, any relationship between or among Chopin, Dr. Cenac and/or Judge Porteous. The subject materials reveal no ex parte communications with Judge Porteous. References to Dr. Cenac are limited to his medical examination and expert testimony and Chopin's legal evaluation of its effect, without reference to any relationship with Judge Porteous.

Accordingly, on this record, I find that the crime/fraud exception does not apply and the attorney-client privilege and work product materials in the subject litigation files remain

protected. The subject materials contain nothing from which it might reasonably be inferred that Chopin or Dr. Cenac were employed by the defendants/clients to obtain an unfair advantage with or favored treatment by Judge Porteous in the underlying litigation and thus commit fraud on the court. Defendants' motions are GRANTED, and the subpoenas are QUASHED.

New Orleans, Louisiana, this \_\_\_10th\_\_\_ day of August, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE