**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ADA D. TURNER, et al.                                    CIVIL ACTION

VERSUS                                                  NO. 10-1823

NEAL E. PLEASANT, et al.                                SECTION: "G"(2)

<u>**ORDER AND REASONS**</u>

Before the Court is Plaintiffs Ada and Ronnie Turners' (collectively, "Plaintiffs") Motion for

Partial Summary Judgment,[1] wherein they request that this Court vacate an earlier judgment and enter

judgment in their favor on the elements of their independent action, saving only a decision on whether

to grant a new trial or enter judgment on the record of the original case. After considering the

complaint, the pending motion, the memorandum in support, the oppositions, the replies, the record,

oral argument made before the Court, and the applicable law, the Court will deny the pending motion

and allow this matter to proceed to trial.

**I. Background**

***A. Factual Background***

In the complaint, Plaintiffs name Neal E. Pleasant ("Pleasant"), RPIA of Delaware, Inc.

("RPIA"), Neal E. Pleasant Living Trust ("NEPLT"), the Travelers Insurance Company ("Travelers"),

and Standard Fire Insurance Company ("SFIC") (collectively, "Defendants") as defendants.[2] With the

exception of NEPLT, Plaintiffs and all other defendants were parties to a civil action styled *Ada D.*

---

[1]  Rec. Doc. 56.

[2]  Rec. Doc. 1 at ¶ 1.  NEPLT was improperly named in this lawsuit because NEPLT has no ownership interest
in the vessel made the subject of the underlying lawsuit. Rec. Doc. 3-1 at p. 1. Travelers was dismissed without prejudice
on October 27, 2010. Rec. Doc. 15.

*Turner, et al. v. Neal E. Pleasant, et al.*, Civil Action No. 01-3572 (hereinafter, "*Turner I*"), which proceeded before the former Judge G. Thomas Porteous ("Porteous"), without a jury, on April 22 and 23, 2003.[3]

When *Turner I* was filed on November 30, 2001, Defendants were represented by Mark Stephen Taylor, an attorney at Waller & Associates.[4] On March 14, 2002, after issue had been joined in *Turner I*, Defendants' moved to enroll Richard A. Chopin ("Chopin"), of Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, as additional counsel and to designate him as trial attorney of record,[5] which was granted.

On January 22, 2004, Porteous entered a judgment in favor of defendants.[6] Plaintiffs claim that around this time, Plaintiffs' counsel learned that Chopin and Porteous had a "close personal relationship" and had gone on several hunting trips together; it was later learned that the hunting trips were "completely paid for by Mr. Chopin's client Diamond Offshore Drilling Company."[7] Porteous also attended hunting trips paid for by the Rowan Drilling Companies, another Chopin client. Plaintiffs contend that these facts were not fully unearthed until a House of Representatives Report was published six years later, in March 2010, in connection with Porteous's impeachment proceeding before Congress. As a result of the proceeding, Porteous was removed from the bench of the United States District Court for the Eastern District of Louisiana.[8]

---

[3] *Id.* at ¶ 2.

[4] *See* Civ. Action No. 01-3572, Rec. Doc. 5 at p. 4.

[5] Civ. Action No. 01-3572, Rec. Doc. 10.

[6] Rec. Doc. 56-1 at p. 2.

[7] *Id.*

[8] *Id.*

On February 5, 2004, Plaintiffs filed a request for a new trial in *Turner I* coupled with a motion for recusal, "admittedly lacking in detailed factual support, but alleging upon information and belief that the undisclosed relationship between Judge Porteous and Mr. Chopin and their hunting trip together during the pendency of the case gave rise to an appearance of impropriety."[9] Chopin opposed the motion, and Porteous ultimately denied the motion for new trial and recusal, flatly rejecting the assertion that he could be perceived as impartial in *Turner I*.

Here, Plaintiffs again seek relief from the judgment entered by Porteous, alleging that "defendants individually and through their agents therein attempted to obtain a result in their favor by resorting to means other than the law and evidence amounting to a fraud upon the court."[10] The complaint further explains that Porteous was impeached by the United States House of Representatives on March 4, 2010, and a full congressional report was issued outlining a myriad of improper behavior on the part of Porteous and several attorneys and litigants.[11] Plaintiffs claim that in the instant matter, Defendants received a favorable judgment by:

> "a. Improperly exploiting a personal relationship between the district judge and defense counsel with the aim of obtaining discriminatory and favorable treatment in the litigation;
>
> b. Concealing the said relationship when disclosure thereof was expressly called for and required by law;
>
> c. Improperly exploiting a personal relationship between the district judge and a witness whose credibility was at issue with the aim of obtaining discriminatory and favorable treatment in the litigation; and
>
> d. Improperly preventing full and fair litigation of all issues germane to Plaintiff's

---

[9] *Id.* at p. 3.

[10] Rec. Doc. 1 at ¶ 3.

[11] *Id.* at ¶ 6.

case."[12]

Plaintiffs request that this Court vacate the previous judgment, render a judgment in their favor based on the evidence presented in the previous suit, or in the alternative, order a new trial.[13]

### B. Procedural Background

Plaintiffs filed the complaint in this matter on June 25, 2010, and the case was allotted to Judge Lance M. Africk, Section "I."[14] On January 26, 2011, Judge Africk granted a motion to dismiss on the grounds of *res judicata*.[15] Plaintiffs appealed Judge Africk's decision to the United States Court of Appeals for the Fifth Circuit. While on appeal, this matter was transferred to this section, Section "G," as part of a new docket.[16] The Fifth Circuit reversed Judge Africk's dismissal and remanded.[17]

On November 20, 2012, Plaintiffs filed the pending motion for partial summary judgment.[18] On January 8, 2013, Defendant SFIC filed an opposition to the pending motion.[19] On January 9, 2013, Pleasant and RPIA filed a separate opposition.[20] On January 16, 2013, with leave of court, Plaintiffs

---

[12] *Id.* at ¶ 6.

[13] *Id.* at ¶ 9.

[14] *Id.*

[15] Rec. Doc. 18.

[16] Rec. Doc. 23.

[17] Rec. Doc. 25.

[18] Rec. Doc. 56.

[19] Rec. Doc. 79.

[20] Rec. Doc. 82.

filed replies addressing Pleasant and RPIA's opposition and  SFIC's opposition, separately.[21] Oral

argument was heard on January 23, 2013.[22]


## II. Parties' Arguments

In support of the pending motion, Plaintiffs seek relief from the judgment rendered by

Porteous in *Turner I*  pursuant to Federal Rule of Civil Procedure 60(b), which provides:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding**. On motion and
> just terms, the court may relieve a party or its legal representative from a final
> judgment, order, or proceeding for the following reasons:
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have
>> been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation,
>> or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released or discharged; it is based on an
>> earlier judgment that has been reversed or vacated; or applying it
>> prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

Plaintiffs further explain that pursuant to Rule 60(c)(1), such a motion must be made in a reasonable

time, or within one year for reasons (1), (2), or (3). However, Rule 60(d) provides that, "This rule

does not limit a court's power to: (1) entertain an independent action to relieve a party from a

judgment, order, or proceeding; ...  or (3) set aside a judgment for fraud on the court."

---

[21]  Rec. Doc. 92; Rec. Doc. 94.

[22]  Rec. Doc. 100.

Plaintiffs also explain that under the Fifth Circuit's decision in *Addington v. Farmer's Elevator Mutual Insurance Co.*,[23] to succeed on an "independent action" to relieve a party from judgment, a plaintiff must show:

(1) a judgment which ought not, in equity and good conscience, to be enforced;
(2) a meritorious claim in the underlying case;
(3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense;
(4) the absence of fault or negligence on the part of defendant; and
(5) the absence of any adequate remedy at law.[24]

However, only "extrinsic" fraud, as opposed to "intrinsic" fraud will support an independent cause of action and satisfy the third element. Plaintiffs quote from the United States Supreme Court in *Hazel-Atlas Glass Company v. Hartford-Empire Company*,[25] where the Supreme Court explained the difference:

The distinction between extrinsic and intrinsic fraud is not technical but substantial. The statement that only extrinsic fraud may be the basis of a bill of review is merely a corollary of the rule that review will not be granted to permit relitigation of matters which were in issue in the cause and are, therefore, concluded by the judgment or decree. The classical example of intrinsic as contrasted with extrinsic fraud is the commission of perjury by a witness. While perjury is a fraud upon the court, the credibility of witnesses is in issue, for it is one of the matters on which the trier of fact must pass in order to reach a final judgment. An allegation that a witness perjured himself is insufficient because the materiality of the testimony, and opportunity to attack it, was open at the trial. Where the authenticity of a document relied on as part of a litigant's case is material to adjudication, as was the grant in the Throckmorton case, and there was opportunity to investigate this matter, fraud in the preparation of the document is not extrinsic but intrinsic and will not support review. Any fraud connected with the preparation of the Clarke article in this case was extrinsic, and, subject to other relevant rules, would support a bill of review.[26]

---

[23]   650 F.2d 663, 667-68 (5th Cir. Unit A July 1981).

[24]   *Id.* at p. 6

[25]   322 U.S. 238 (1944).

[26]   *Id.* at 261 n. 18.

*Hazel-Atlas* also held that extrinsic fraud tampers with the "administration of justice" and jeopardizes the very institutions themselves, not just the litigants in a particular case.[27]

Plaintiffs argue that the "Diamond-Chopin-Porteous connection, was aimed at the judicial machinery, was extrinsic to *Turner I,* affected litigants not involved in *Turner I,* was perpetrated by officers of the court, and was undiscoverable in the ordinary course of litigation by [Plaintiffs]."[28] Plaintiffs contend that when Porteous, the presiding judicial officer in *Turner I,* entered an order denying recusal, he committed fraud upon the court because he claimed that (1) the suggestion that the court was impartial toward defense counsel was unsubstantiated; (2) the attack on the credibility of the court was unfounded and unsupported by any evidence; and (3) no reasonable person could doubt the court's impartiality, which are all factually false.[29] Plaintiffs claim that it is undeniable that the hunting trips were arranged by Chopin and paid for by his client, Diamond, and therefore there was a factual foundation to the allegations in the motion to recuse. Plaintiffs further highlight 5 U.S.C. § 7353, which specifically prohibits judicial officers from soliciting or accepting gifts from anyone seeking official action from them.

Plaintiffs contend that if Chopin and Porteous believed their actions were nonetheless proper, they could have admitted the facts and defended their actions, but the relationship was not disclosed, and therefore, fraud was committed.[30] Plaintiffs argue that it is irrelevant that neither Rowan nor Diamond were parties in *Turner I,* and in fact claim that their absence is also "probative of the

---

[27] *Id.* at 247.

[28] Rec. Doc. 56-1 at p. 8.

[29] *Id.* at pp. 8-9.

[30] *Id.* at p. 11.

7

extrinsic nature of the fraud on the court that [Plaintiffs' counsel] brought to light."[31] "What prompted that fraud in *Turner I* was the falsity and evasiveness of the statements by Judge Porteous and Mr. Chopin filed into the very record of the case  in order to hide the improper conduct extrinsic to the case."[32]

Plaintiffs also claim that the four remaining elements for an independent action must be found summarily in favor of Plaintiffs. Concerning the first factor, whether the prior judgment is one which in equity and good conscience should stand, they argue that the judgment ought not to stand because it is fairness that matters in fraud cases, not whether the judgment is factually correct: "Based on what is known, the clear and obvious suggestions of impropriety and partiality at the end of the proceeding, it would be unconscionable to let the judgment stand without review."[33]

Regarding the second factor, the existence of an underlying meritorious claim, Plaintiffs aver that it is obvious they were denied justice in their request for recusal. Further, Plaintiffs argue that the substantive claims at issue in *Turner I,* regarding personal injury, were supported by several independent witnesses, and hinged on a credibility call by Porteous, who found for the defendants in giving greater weight to their witnesses and experts.[34]

As to the fourth factor, the absence of negligence on the part of the party seeking relief, they explain that they were "handcuffed" until the House Report was released. Moreover, the Fifth Circuit opined in reviewing Judge Africk's opinion on appeal, that until the release of this report, this

---

[31]  *Id.* at p. 12.

[32]  *Id.*

[33]  *Id.* at p. 13 (citing *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1348 (5th Cir. 1988)).

[34]  *Id.*

evidence was unavailable to Plaintiffs.[35] Finally, with regard to the fifth factor, Plaintiffs claim that all applicable time periods have passed, leaving the independent action as the sole remaining remedy for Plaintiffs.

In opposition, SFIC argues that Chopin was hired for legitimate business reasons based on his experience, not any expectation of favor with Porteous.[36] SFIC claims that Plaintiffs have put forward no evidence to refute this claim or demonstrate that SFIC had any knowledge of the alleged social relationship between Chopin and Porteous.[37]

Additionally, SFIC claims that Plaintiffs cannot satisfy all of the *Addington* factors. First, SFIC contends that Plaintiffs have presented no admissible evidence that the judgment in *Turner I* was incorrect. Further, SFIC argues that Plaintiffs cannot show the absence of fault or negligence on their part, because they had factual support for their motion to recuse in April 2003 that they did not pursue, and only filed the motions for new trial and recusal after an unfavorable judgment had been rendered in late 2003.[38] SFIC also maintains that Plaintiffs "sat on their rights" for years without taking "meaningful steps to correct [the] perceived miscarriage of justice," and therefore cannot now say that the judgment in *Turner I* should be reversed based on law and equity.[39]  SFIC argues that Plaintiffs cannot satisfy the condition that they lack any adequate remedy at law because Plaintiffs had a year to file for relief from the judgment under Rule 60(b)(3), but failed to do so. SFIC also contends that when the Fifth Circuit reversed Judge Africk's order dismissing this case, the court

---

[35] *Id.* at p. 14.

[36] Rec. Doc. 79 at p. 1.

[37] *Id.* at p. 7.

[38] *Id.* at pp. 8-9.

[39] *Id.* at p. 9.

could have reversed its own ruling from March 2005 when it affirmed Porteous's denial of a motion for new trial and recusal.[40] SFIC further argues that the Fifth Circuit's most recent decision in this case only held that the complaint stated facts sufficient to survive a 12(b)(6) motion to dismiss.

In the opposition filed by Pleasant and RPIA (collectively, "Pleasant"), Pleasant argues that Plaintiff attempts to "short circuit or short change a decision on the very essence of this 'two-tiered' case."[41] The first tier would have this Court decide whether there was a fraud upon the Court, and if so, the second tier would require the Court to determine if a new trial is warranted. Pleasant contends that this Court must determine whether the judgment in *Turner I* was rendered solely because of the relationship between Chopin and Porteous, which would require this Court to look "beyond mere argument, innuendo and suspicion." Further, this Court must determine if no reasonable judge could have come to the conclusion reached by Porteous.

According to Pleasant, the Fifth Circuit remanded this matter specifically so the Court could determine if a new trial was warranted. Pleasant avers that if this matter were as clear as Plaintiffs maintain, the Fifth Circuit would have ordered a new trial rather than remand it for further examination: "The Fifth Circuit had the very same evidence before it upon remand that plaintiffs attached as exhibits to their motion."[42]

Pleasant asserts that Plaintiffs wish this Court to regard the House Report as "sort of *res judicata* for this case, removing the Court from having to determine anything further." However, Pleasant argues that this would be improper, and further, that the House Report actually focuses on

---

[40] *Id.* at p. 10.

[41] Rec. Doc. 82 at p 1.

[42] *Id.* at p. 2.

another matter, and only briefly mentions the relationship between Chopin and Porteous regarding *Turner I*.[43] Pleasant claims that the testimony of the claims manager for Diamond, Kenneth Bradley, which is attached to Plaintiff's motion, evidences a "gray area" that precludes summary judgment here. From this testimony, Defendants claim that there is evidence that Chopin did not invite Porteous on the hunting trips, but instead private invitations were sent to him by Diamond, who at all times paid for these trips. Therefore, presumably the "gift" of the hunting trip did not come from Chopin, the attorney appearing before Porteous in *Turner I*; the "gift" was from Diamond, a party not in *Turner I*, and therefore not in direct violation of 5 U.S.C. § 7353. Further, in the testimony of Kenneth Bradley, he states that Chopin made no mention of his relationship with Porteous even when Chopin was hired by Diamond.[44]

Finally, Pleasant notes that in Chopin's testimony he stated that he was unsure if Porteous disclosed the Chopin-Porteous relationship to Plaintiffs, but did recall that Plaintiffs' counsel disclosed to Chopin that they were good friends with Porteous. "There is nothing in the testimony of Chopin to even remotely indicate he gave anything of value to Porteous, during the pendency of the case or at any other time. At the very least, there is an issue of fact and plaintiffs do not even scratch the surface to resolve those issues in the evidence attached to their motion."[45]

In reply to Pleasant's opposition, Plaintiffs aver that Pleasant fails to refute one material fact that has been established. In short, Plaintiffs conclude that it has already been proven that Porteous accepted gifts from Chopin's corporate clients and that Chopin and Porteous knowingly filed

---

[43] *Id.* at p. 3.

[44] *Id.* at p. 5.

[45] *Id.* at p. 6.

deceptive pleadings to hide this, thus committing fraud upon the Court.[46] Plaintiffs reject that they must prove some "but-for" causation regarding the judgment to prove fraud on the court.

Plaintiffs argue further that "No one seriously contends that Judge Porteous and Mr. Chopin expressly conspired to rig the verdict in [*Turner I*]. No case like this could be proven were that showing required."[47] Instead, Plaintiffs contend that they have proven that Porteous and Chopin were "involved in a more diffuse scheme subversive to the fair and impartial working of this Court." Next, Plaintiffs attack Pleasant's assertions about the significance of the Fifth Circuit's decision reversing Judge Africk. Plaintiffs reject the contention that the Fifth Circuit had all the evidence before it and would have simply rendered judgment in favor of Plaintiffs if the court felt that was warranted. Plaintiffs note that the appellate record did not have the depositions of Mr. Bradley or Chopin, which this Court now has before it.[48] Moreover, Plaintiffs note that they did not request affirmative relief on appeal, and therefore a request to reverse or vacate the judgment in *Turner I* was not presented to the Fifth Circuit.

Plaintiffs next address the second of the *Addington* factors – whether they can prove they have a "meritorious claim." Plaintiffs argue that "meritorious" is not synonymous with "dead winner," but that they must only prove that if they received an impartial judge, they "might have won."[49] Plaintiffs note that the Fifth Circuit acknowledged that the decision in *Turner I* hinged on a credibility determination among the witnesses, and could have gone either way.

---

[46] Rec. Doc. 92 at p. 1.

[47] *Id.*

[48] *Id.* at p. 2.

[49] *Id.* at p. 3.

Plaintiffs also filed a separate reply to the opposition filed by SFIC.[50] It specifically focuses on the fourth *Addington* factor - whether there was an absence of fault or negligence on the part of the party seeking relief. Although SFIC argues that Plaintiffs were dilatory in not investigating sooner, Plaintiffs contend that the Fifth Circuit's decision reversing Judge Africk foreclosed this argument, because it held that this evidence was not discoverable until the House Report came out. The Fifth Circuit noted that Plaintiffs, unlike the House of Representatives, do not have the power to compel testimony.[51] Plaintiffs also attack SFIC's claim that Plaintiffs cannot show the absence of another remedy at law, as the Fifth Circuit already held in favor of Plaintiffs on this issue.[52] Finally, Plaintiffs argue that the most recent pronouncement from the Fifth Circuit in this matter, while declining to expressly overrule its decision affirming Porteous in *Turner I*, significantly undermined it and has left open the possibility of this Court to "overrule the Fifth Circuit" by vacating the judgment in *Turner I*.[53]

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, discovery and disclosure materials on file, and any affidavits show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[54] When assessing whether a dispute as to any material fact

---

[50]  Rec. Doc. 94.

[51]  *Id.* at pp. 1-2.

[52]  *Id.* at pp. 2-3.

[53]  *Id.* at p. 4.

[54]   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

exists, the court considers "all of the evidence but refrains from making credibility determinations or weighing the evidence."[55] All reasonable inferences are drawn in favor of the nonmoving party,[56] but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[57] If the record, as a whole, could not lead a rational trier of fact to find for the nonmoving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[58] Because factual disputes may not be resolved on summary judgment, a non-movant need not offer all of its evidence, but rather only enough so that a fact-finder *might* return a verdict in its favor.[59]

The Fifth Circuit has recognized that "a district court has somewhat greater discretion to consider what weight it will accord the evidence [presented on a motion for summary judgment] in a bench trial than in a jury trial."[60] If a "[bench] trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district court properly should 'draw his inferences without resort to the expense of trial.'"[61] However, the Fifth Circuit has cautioned that "a district court must be aware that assessments of credibility come into sharper focus" at the time of trial, therefore, "even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the

---

[55]   *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[56]   *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (quoting *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986)).

[57]   *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[58]   *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147-48 (5th Cir. 1992).

[59]   *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991).

[60]   *In re Placid Oil Co.*, 932 F.2d 394, 397 (5th Cir. 1991).

[61]   *Placid Oil*, 932 F.2d at 398 (quoting *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1124 (5th Cir. 1978)).

same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result."[62]

## IV. Law

The seminal case in this Circuit regarding independent actions is *Addington v. Farmer's Elevator Mutual Insurance Co.*,[63] which set out the five factors necessary to succeed on an independent action: (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded;[64] (3) fraud, accident, or mistake which prevented the [losing party] in the judgment from obtaining the benefit of his [arguments]; (4) the absence of fault or negligence on the part of defendant; and (5) the absence of any adequate remedy at law.

In *Addington*, the plaintiff, in a case brought in  federal court in Texas, sought an independent action to reverse a Kansas federal district court's order granting the defendant's motion for summary judgment. The Fifth Circuit ultimately denied the plaintiff's claim for an independent action. In the original case, the defendant brought a suit in federal district court in Kansas against the plaintiff on a subrogation claim, and received a judgment against the plaintiff. Later, the plaintiff filed a suit for harassment in a federal district court in Texas, claiming that the insurance company subjected him to harassment because (1) the subrogation claim was discharged in bankruptcy; and (2) the defendant was attempting to enforce an invalid money judgment granted to the defendant on the basis of the

---

[62] *Id.*

[63] 560 F.2d 663 (5th Cir. Unit A July 1981).

[64] This factor has also been articulated at "a meritorious claim by the party seeking relief." Moore's Manual, § 26.80[3][a].

subrogation.[65] The defendant filed a motion for summary judgment.[66] In the motion, defendant argued that the subrogation claim was not discharged in bankruptcy and that the plaintiff could not now collaterally attack the Kansas federal district court judgment. The plaintiff then sought leave to amend his complaint to collaterally attack the Kansas federal district court judgment on the basis of fraud. Specifically, the plaintiff alleged that the Kansas federal judge and certain former employees of the plaintiff's company conspired to have judgment entered against the plaintiff.[67] The Texas district court granted the defendant's motion for summary judgment without expressly ruling on the plaintiff's motion to amend.

The Fifth Circuit held that the denial of the motion to amend was implied, and that in essence the amendment was an attempt to assert an independent action to attack the Kansas federal district court's decision on the basis of "fraud on the court."[68] The Fifth Circuit reiterated the five factors necessary to prevail on an independent action and noted that an independent action cannot be the basis to relitigate issues. The Fifth Circuit held that the plaintiff could not satisfy the necessary factors in that matter. First, the Fifth Circuit reasoned that the charge of bias on the part of the federal judge could have been remedied on direct appeal from the Kansas district court judgment, but was not. Further, the Fifth Circuit stated that the plaintiff's claim that the defendant used perjured testimony that was accepted by the Kansas district court was simply an attempt to relitigate issues. Finally, the Fifth Circuit, relying in part of the Supreme Court's decision in *Hazel-Atlas*, reasoned:

---

[65] *Addington*, 560 F.2d at 664.

[66] *Id.* at 665.

[67] *Id.*

[68] *Id.* at 667 (quoting *Hazel-Atlas*, 322 U.S. at 245-46).

In sum, the plaintiff has alleged no facts indicating that the issues raised were not open to litigation in the former action or that he was denied a fair opportunity to make his claim or defense in that action. His independent action for relief on the ground of fraud therefore fails.

Nor does [the plaintiff's] proposed amendment establish a "fraud upon the court": he has alleged no scheme by which the integrity of the judicial process has been fraudulently subverted by a deliberately planned scheme in a manner involving "far more than an injury to a single litigant."[69]

## V. Analysis

It is appropriate to apply the *Addington* factors here. This Court will address those factors in reverse order, because under the specific facts of this case, such an order facilitates a more logical discussion of the pertinent facts regarding the pending motion.

### A. The Absence of Any Adequate Remedy at Law

In reversing Judge Africk's dismissal of Plaintiffs' claim on a motion to dismiss, the Fifth Circuit stated that Plaintiffs have satisfied the fifth factor to succeed on an independent action in this matter: "The Turners must allege they have no adequate remedy at law. They do not. The opportunity to File a Rule 60(b) motion passed long ago."[70] An independent action in equity is the only route potentially available to Plaintiffs at this time under the Federal Rules of Civil Procedure. Here, in opposing Plaintiffs' motion for summary judgment, Defendants do not put forth any new law on this issue, and there is none. Accordingly, Plaintiffs prevail on this factor.

### B. The Absence of Fault or Negligence on the Part of Defendant

---

[69] *Id.* at 668.

[70] *Id.* at p. 10.

Regarding the fourth factor, the Fifth Circuit summarized Plaintiffs' arguments as follows:

> We disagree that the alleged scheme was discoverable by the Turners simply because it was eventually uncovered by the House of Representatives. The House of Representatives is part of a co-equal branch of government. It has the power to compel testimony. It has the power to hold those who refuse to testify in contempt. By comparison, the Turners would have been forced to seek Judge Porteous's permission to conduct depositions. Regardless of any suggestions of additional efforts they might have undertaken, the Turners' ability to uncover immediately after trial what the House Report later claimed was occurring was virtually nonexistent.
>
> Assuming the allegations contained in the complaint are true, there is a reasonable inference that Porteous and Chopin conspired to prevent the Turners from ever learning the truth about Porteous's bias. With the presiding judge and opposing counsel both actively attempting to hide facts from the Turners, the Turners have put forward sufficient facts to plausibly allege that they were not at fault for failing to uncover the fraud.[71]

In the above referenced quotation, the Fifth Circuit was applying the more lenient standard applicable to a motion to dismiss, and found that based on the allegations in the complaint, Plaintiffs had alleged that they were not at fault in failing to uncover the alleged fraud.

For purposes of the pending motion, Plaintiffs' burden to succeed is more stringent, and all Defendants, as non-movants, must do is point to some, but not all, evidence in the record to demonstrate that the fact-finder may rule in their favor.[72] Here, SFIC has argued that Plaintiffs cannot satisfy this factor because Plaintiffs' attorneys in *Turner I* possessed factual support for the "information and belief" upon which they eventually filed their motion for recusal, before Porteous

---

[71]   Rec. Doc. 25 at p. 10 (internal citations omitted).

[72]   *Int'l Shortstop*, 939 F.2d at 1264.

rendered judgment in *Turner I*, but failed to act upon this information.[73] This argument is supported by the affidavit of Carter Wright, one of the Plaintiffs' *Turner I* attorneys.[74]

Accordingly, whether the alleged scheme was discoverable by Plaintiffs before the House Report issued is a disputed issue of material fact in this case. The Court, even as the ultimate trier-of-fact in this case, has limited discretion at this time to weigh the evidence presented. Moreover, it appears that the circumstances surrounding Plaintiffs' knowledge of the alleged fraud have not been fully developed. Therefore, the Court finds that Defendants have put forth sufficient evidence to create a disputed issue of material fact precluding the Court from resolving in whose benefit this factor would inure. Therefore, the Court finds that Defendants have put forth enough evidence to establish that at trial the fact-finder *might* rule in their favor.

### C. Fraud, Accident, or Mistake Which Prevented the Aggrieved Party from Obtaining the Benefit of His Arguments

In discussing this third element, the Fifth Circuit noted that "[s]imple fraud is insufficient," but rather the fraud must be of a "greater order of magnitude."[75] The Fifth Circuit further stated that the allegations that Chopin conspired with Porteous to prevent meaningful appellate review were sufficient to defeat a motion to dismiss. The existence of such a conspiracy and its impact on the judgment rendered in *Turner I* is hotly contested at this juncture, and therefore inappropriate for resolution upon summary judgment. Defendants have refuted the existence of this conspiracy by citing

---

[73] Rec. Doc. 79 at pp. 8-9.

[74] *See* Rec. Doc. 79-2.

[75] *Id.* at p. 9.

to the affidavit of Chopin, where he never claims or implies that he gave anything of value to Porteous in *Turner I* or any other matter, and states that he is uncertain if Porteous disclosed the relationship between him and Porteous, but did remember the disclosure of a relationship between Plaintiffs' counsel and Porteous.[76] Also, there is testimony in the record that Diamond sent private invitations for the hunting trips to Porteous, not Chopin. Again, the Court would note that to defeat a motion for summary judgment, the non-movant need not put forward all of its evidence, but merely enough so that the fact-finder *may* return a verdict in his favor.[77] Moreover, determining whether the alleged fraud rose to  the level necessary to satisfy this element is a deeply disputed factual issue, which may turn on witness credibility. Therefore, the Court finds that Defendants have put forth enough evidence such that a fact-finder *may* return a verdict in their favor in resolving this hotly disputed issue.

### D. A Meritorious Claim in the Underlying Case

Through this independent action, Plaintiffs seek to vacate the judgment in *Turner I*. Neither party refutes that the ultimate determination of the claims in *Turner I*  hinge on credibility assessments. Plaintiffs argue that they can succeed on this element for the purposes of the pending motion simply by proving that their claim could win, not that it is a "dead winner." The Fifth Circuit acknowledged that, "because it is plausible that the Turners may present a winning claim, we cannot say it is without merit."[78] Further, to force Plaintiffs to prove a "dead winner" in order to succeed on the independent action would require the Court to try the case on the merits just to decide whether

---

[76] *See* Rec. Doc. 56-3 at p. 12.

[77] *Int'l Shortstop*, 939 F.2d at 1264.

[78] Rec. Doc. 25 at p. 9.

vacating the judgment is appropriate, therefore making a new trial superfluous. As such, the Court finds that Plaintiffs have satisfied this factor by demonstrating a plausible claim supported by evidence.

### E. A Judgment Which Ought Not, in Equity and Good Conscience, To Be Enforced

In addressing the first factor, the Fifth Circuit cited the House Report generated from Porteous's impeachment proceedings and the record in *Turner I*, and determined that there was a plausible claim that this factor was satisfied because if such "self-dealing" occurred, the judgment should not stand.[79] On a motion for summary judgment, however, the standard is not so deferential to Plaintiffs. Instead, if Defendants, as non-movants, can present some evidence that a fact-finder may rule in their favor, they can defeat the motion for summary judgment. Plaintiffs have come forward with evidence of Porteous's improper relationship with litigants Diamond and Rowan through Chopin, who acted as one of Defendants' attorneys in *Turner I*. However, Defendants have come forward with an affidavit from Mark Taylor, who was counsel of record for SFIC in *Turner I*, where he states that Chopin was only hired for his experience with maritime cases, a legitimate business purpose.[80] Accordingly, Defendants have come forward with competent evidence to refute this factor, claiming that no fraud occurred as to the ultimate judgment in *Turner I*.[81] Therefore, this factor appears to hinge on a credibility determination as to whose witnesses are to be believed and/or how much weight to give to their testimonies. Fifth Circuit precedent cautions district courts that even when the judge will

---

[79] *Id.* at p. 8.

[80] Rec. Doc. 79-1 at ¶¶ 4-5.

[81] *Delta & Pine Land Co.*, 530 F.3d at 398-99.

be the ultimate trier-of-fact, "assessments of credibility come into sharper focus once live witnesses are heard."[82]  Therefore, because the  Court cannot reach a conclusion on this issue without weighing the evidence and making credibility determinations to resolve a factual dispute, summary judgment must be denied.

### VI. Conclusion

To defeat a motion for summary judgment, the non-movant must put forth sufficient evidence – but not all of its evidence – such that a fact-finder may return a verdict in its favor. Here, the Defendants, as non-movants, have successfully put forth some evidence on the first, third, and fourth *Addington* factors to defeat Plaintiffs' motion for summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment[83] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this  6th  day of March, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[82] *Placid Oil*, 932 F.2d at 398.

[83] Rec. Doc. 56.

22